JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.  **CV 10-8006-VBF**                              Dated: **August 31, 2011**

Title:    In Re: Fabian T. Berryhill

---

PRESENT:  HONORABLE VALERIE BAKER FAIRBANK, U.S. DISTRICT JUDGE

      Joseph Remigio                              None Present
      Courtroom Deputy                            Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:    ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                                 None Present

**PROCEEDINGS (IN CHAMBERS):**    **COURT ORDER REVERSING FINAL ORDER OF UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, CASE NO. 09-AP-01283-KT, DKT. #31**

     Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.

     The Court has received, read, and considered Appellant Educational Credit Management Corporation's ("ECMC") Opening Brief (dkt. #13) and related papers. Appellee Fabian T. Berryhill's brief was due on or before March 23, 2011. Dkt. #11. As of August 30, 2011, Berryhill has filed no brief in response.

**I. RULING**

     According to the Notice of Appeal (dkt. #2), ECMC appeals from the following order of the bankruptcy court, No. 09-ap-01283-KT: Docket No. 31. ECMC contends the appeal presents one issue: whether the bankruptcy

cc:  US Bankruptcy Court

MINUTES FORM 90                          Initials of Deputy Clerk ___jre___
CIVIL - GEN

court erred in discharging Berryhill's student loans. Appendix to Opening Brief ("OB"), (hereinafter, "Appx."), p. 321.[1]

For the reasons stated herein, the Court **REVERSES** the bankruptcy court's order discharging Berryhill's student loans.

## II. PROCEDURAL HISTORY & BACKGROUND

Appellee Fabian T. Berryhill filed a petition for bankruptcy on July 31, 2009. On August 3, he filed a Complaint against United Student Aid Funds, Inc., which later transferred all right, title and interest in the student loans at issue to Berryhill pursuant to the terms of the Federal Family Education Loan Program ("FFELP"). *See* Appx., pp. 82, 83-87. Berryhill filed the Complaint in order to discharge his student loan debt pursuant to 11 U.S.C. § 523(a)(8). *Id.* On October 5, 2010, the matter came before the bankruptcy court. By this time, the balance on the student loans was approximately $11,715.25. Appx., p. 207. The bankruptcy court granted judgment in favor of Appellee. *See* dkt. #6; *see also* dkt. #2-1.

Berryhill took out the student loan in order to finance, in part, his B.S. in Business Administration from California State University, Dominguez Hills, which he earned in 2005. Appx., pp. 212, 241. Upon graduation and without full time employment secured, Berryhill moved in with family in Atlanta. *Id.* at 217. Between 2006 and 2007, Berryhill moved back to Los Angeles. *Id.* at 219.

Berryhill reported adjusted gross income to the IRS for the years 2005 through 2008 as follows:

**2005: $16,621**
**2006: $25,425**
**2007: $30,554**
**2008: $40,395**

*Id.* at 145-52. Since July 2007, Berryhill has held his current job as an executive assistant through a temporary employment agency, where, at the time of trial, he worked approximately 40 hours per week at $20.20 per

---

[1] ECMC's Opening Brief expands upon the stated issue on appeal as follows: "Berryhill is a healthy 37-year-old debtor with no dependents and has steadily increased his earnings over the last several years, now earning approximately $40,000 per year. Despite offering virtually no evidence, particularly of additional circumstances and good faith efforts to repay, the Bankruptcy Court discharged approximately $12,000 in student loan debt. Was this error?"

hour. *Id.* at 243-44. At the time of trial, Berryhill approximated his average expenses as $2876 per month, and his net income as $2524 per month. *Id.* at 163.

On January 11, 2010, ECMC sent Berryhill a letter informing Appellee of alternative repayment plans for his student loan under the William D. Ford Direct Loan Program (the "Ford Program") and the FFELP. *Id.* at 178. Based on the amount of student loan principal at the time, Berryhill's repayment plan options ranged from initial monthly payments of $74.16 to $112.56. *Id.* at 183.

**III. LEGAL STANDARD**

The Court is obliged to accept the bankruptcy court's findings of fact unless clearly erroneous. *Rifino v. United States, et. al.* (*In re Rifino*), 243 F.3d 1083, 1086 (9th Cir. 2001)(citation omitted). The Court reviews de novo the bankruptcy court's application of the legal standard in determining whether a student loan debt is dischargeable as an undue hardship. *Id.* (citation omitted).

Generally, student loan debts are presumed to be nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(8), which provides:

> A discharge under section 727 . . .does not discharge an individual debtor from any debt . . . unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents, for -- an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or for an obligation to repay funds received as an educational benefit, scholarship or stipend.

11 U.S.C. § 523(a)(8).

To determine if excepting student loans from discharge will create an undue hardship on a debtor, the Ninth Circuit has adopted the three-part test established by the Second Circuit in *Brunner v. New York State Higher Education Servs. Corp.* 831 F.2d 395 (2d Cir. 1987). *Rifino*, 245 F.3d at 1087. Under this test, the debtor must prove:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the

repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Id.* (*citing Brunner*, 831 F.2d at 396). If the debtor fails to satisfy any one of these requirements, the bankruptcy court's inquiry must end there, with a finding that the debt has not been discharged. *Id.* at 1088 (citation omitted).

**IV. ANALYSIS**

    **A. FIRST PRONG OF *BRUNNER* TEST**

The first prong requires the debtor to prove that he cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loans. *Rifino*, 245 F.3d at 1088. To meet this requirement, the debtor must demonstrate more than simply tight finances. *Id.*(citation omitted). "In defining undue hardship, courts require more than temporary financial adversity, but typically stop short of utter hopelessness." *Id.*(citation omitted). Indeed, the "proper inquiry is whether it would be unconscionable to require the Debtor to take steps to earn more income or reduce [his] expenses." *United Student Aid Funds, Inc. v. Nascimento* (*In re Nascimento*), 241 B.R. 440, 445 (B.A.P. 9th Cir. 1999)(internal quotations and citation omitted).

ECMC argues that Berryhill has failed to demonstrate that it would be "unconscionable" to require him to take steps to reduce his expenses. OB, p. 20. The bankruptcy court noted that such expenses include, for example, $65 per month for a gym membership and related expenses (Appx., p. 250), $70 per month for his cell phone (*id.*, p. 248), and $104 per month for internet and cable television (*id.*). Moreover, in 2007, Berryhill purchased a new car, for which he currently makes monthly payments of $438, which will end in 2013. *Id.* at 236, 250. ECMC argues that it would not be unconscionable to require Berryhill to, inter alia, forego his gym membership, reduce his clothing and budget, or reduce his cell phone, cable, or internet service. O.B., p. 23-4.

Under the circumstances, the Court finds that Berryhill failed to establish that he could not maintain, based on current income and expenses, a "minimal" standard of living for himself if forced to repay the student loans. To the extent the bankruptcy court found that Berryhill was unable to make the student loan payments and still maintain a minimal standard of living (Appx., p. 304), the Court determines that such finding was clearly erroneous. Indeed, Berryhill failed to demonstrate his effort to minimize expenses, and monthly expenses such as internet, cell phones, and gym memberships have been expressly held to be "generally unnecessary to maintain a minimum standard of living." *Educ.*

*Credit Mgmt. Corp. v. Mosko* (*In re Mosko*), 515 F.3d 319, 325 (4th Cir. 2008); *see also East v. Educ. Credit Mgmt. Corp.* (*In re East*), 270 B.R. 485, 494 (Bankr. E.D. Cal. 2001)(debtor's "cable television expense of $34 per month is not a part of a minimal standard of living.").

Because the Court concludes that Berryhill failed to satisfy the first prong of the *Brunner* test, the Court's "inquiry must end here, with a finding of no dischargeability." *Rifino*, 245 F.3d at 1089 (internal quotations and citation omitted). Nevertheless, the Court completes the examination of the remaining two prongs of the *Brunner* test, both of which Berryhill has likewise failed to satisfy.

### B.   SECOND PRONG OF *BRUNNER* TEST

The second prong of the *Brunner* test requires Berryhill to prove that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans. *Rifino*, 245 F.3d at 1088. This part of the test "is intended to effect the clear congressional intent exhibited in section 523(a)(8) to make the discharge of student loans more difficult than that of other nonexcepted debt." *Id.* at 1088-89 (citations omitted). Thus, Appellee must "demonstrate insurmountable barriers to [his] financial recovery and ability to pay." *Educ. Credit Mgmt. Corp. v. Nys* (*In re Nys*), 446 F.3d 938, 946 (9th Cir. 2006)(citations omitted).

ECMC argues that Berryhill is relatively young (at 37 years old), and has marketable and employable skills. O.B., p. 25. He has no dependents, and "likely has 30 or more years of working life ahead of him." *Id.* Moreover, ECMC argues that the bankruptcy court determined that Berryhill had met his burden as to this prong based on (1) the current general state of the economy, and (2) his lack of health insurance. *Id.* As a result, the bankruptcy court concluded that Berryhill has "basically shown that this entire state of affairs is what the status quo is and is likely to remain the status quo into the future." Appx., p. 303.

However, as ECMC argues, the current state of the economy is not properly considered an "insurmountable barrier" to a particular debtor so as to rise to the level of undue hardship. *See, e.g., Nelsen v. Educ. Credit Mgmt. Corp.* (*In re Nelsen*), 404 B.R. 892, 895 (Bankr. E.D. Wisc. 2009); *United Student Aid Funds, Inc. v. Pena* (*In re Pena*), 155 F.3d 1108, 1111 (9th Cir. 1998)("garden-variety hardship" is an insufficient excuse for a discharge of student loans). And, ECMC argues, although Berryhill testified that he has chosen to forego alternative employment that might provide healthcare benefits because such a job might pay less (Appx., p. 239), such choice does not create an "insurmountable barrier." Accordingly, the Court finds that Berryhill has failed to satisfy the second prong of the *Brunner* test.

### C. THIRD PRONG OF *BRUNNER* TEST

Finally, Berryhill must show that he has made good faith efforts to repay the student loans. *Brunner*, 831 F.2d at 396. The underlying purpose of this requirement is to "forestall students . . . from abusing the bankruptcy system." *Pena*, 155 F.3d at 1110. Good faith is "measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses." *Educ. Credit Mgmt. Corp. v. Mason*, 464 F.3d 878, 884 (9th Cir. 2006)(citation omitted). While not dispositive, courts will also consider a "debtor's effort - or lack thereof - to negotiate a repayment plan." *Id.* (citation omitted). Here, ECMC argues that there is no evidence whatsoever that Berryhill has attempted to negotiate a repayment plan on his student loans. O.B., p. 31. ECMC also argues that Berryhill has presented no evidence that he has yet made any payments on the loans. *Id.* at 32. In short, ECMC argues that Berryhill has failed to meet his burden of proof on the issue of good faith. *Pa. Higher Educ. Assistance Agency v. Birrane* (*In re Birrane*), 287 B.R. 490, 500 (9th Cir. BAP 2002).

As to the third prong, the bankruptcy court also found in Berryhill's favor. Appx., p. 304. In so doing, the bankruptcy court determined that because Berryhill had made a "sufficient showing" that he had not been able to make his student loan payments in the past, could not do so at the time of trial, and was unlikely to be able to do so in the foreseeable future, Berryhill had not failed to demonstrate good faith efforts to repay his loans. *Id.* at 304-05. However, as ECMC points out, such analysis incorrectly elides the first two prongs of the *Brunner* test with the third. Particularly in light of the evidence presented that Berryhill failed to follow up on ECMC's information concerning alternative repayment options (*see, e.g.,* Appx. pp. 178-83) which, depending on his income level, could have resulted in initial monthly student loan payments of $74.16 to $112.56, the Court finds that Berryhill's failure to present any evidence or testimony that he has explored such options is fatal to his request for discharge. Berryhill has failed to present evidence sufficient to satisfy the third prong of the *Brunner* test.

Therefore, for all the foregoing reasons, the bankruptcy court's order discharging Berryhill's student loan is hereby **REVERSED.**

**IT IS SO ORDERED.**

MINUTES FORM 90                                                   Initials of Deputy Clerk ___jre___
CIVIL - GEN